thank you your honor may it please the court I would like to reserve three minutes for rebuttal okay miss Todd during the relevant period in this case was between 58 to 68 60 years old she had impairments significant severe impairments in her cervical spine thoracic spine lumbar spine both knees both shoulders including severe stenosis that was documented by MRI findings arthritis in both hands polymyalgia rheumatica or PMR fibromyalgia which was treated by her treating rheumatologist severe edema morbid obesity chronic obstructive pulmonary disease obstructive sleep apnea cardiac impairments she needed a walker by September of 2014 and was on home oxygen chronically due to her age if she cannot perform her past relevant work she is disabled under the Social Security grid rules if she cannot be on her feet six to eight hours according to the ALJ's vocational expert she cannot perform her past relevant work and therefore would be disabled the ALJ in this case relied on the opinions from state agency positions dr. Staley and dr. Vergy to determine that miss Todd could perform light work from her onset date of May 31st 2013 however here the ALJ aired as both dr. Staley and dr. Vergy found miss Todd was unable to work from her onset date of May 31 2013 but they both felt that her condition would improve by May of 2014 therefore with that improvement in her in her condition in the future then she would not be disabled because she wouldn't meet the 12-month durational requirement this is found in the record at pages 73 and 96 and 131 where these doctors found that she was disabled as her of her alleged onset date but they felt like in the future she would improve the administrative logic aired in a significant way because the administrative logic has never realized that the doctors that she gave significant weight to said that she was currently disabled but it would be only in the future they projected that her condition would improve in fact the record demonstrates that although she had some temporary improvement from her PMR symptoms when she was on a high dose of prednisone and Tylenol 4 with codeine accompanied with a marked restriction in weight-bearing activity that her condition markedly declined in all other areas. Dr. excuse me ARMP Fussfeld who was her primary treating provider noted several times that miss Todd's pain was exacerbated by weight-bearing. Now that's significant because when her PMR was under control with the high doses of prednisone and the Tylenol 4 she still had to restrict her weight-bearing in a very marked way in order to maintain her pain control. Now that's significant because when she restricted her weight-bearing it meant she couldn't be on her feet in fact the records demonstrate that she could only be on her feet for up to about 15 minutes and that no more than two hours in any day. That would put her at the sedentary level and according to the vocational expert would mean that she was not able to perform any of her past relevant work and with that finding she would be conclusively determined to be disabled under Social Security's grid rules. The matter doesn't need to be back development because the vocational expert also testified at the hearing that she had no transferable skills. As there is there would be a fact finding necessary if the if that that fact wasn't established in the record because under the grid. Council aren't the grid rules only relevant at step five and your argument below was as to the rules relevance at step four. So yes the the grid rules are relevant at step five your honor and so how that how the analysis we feel goes is that because she cannot perform her past relevant work that the grid rules would mandate a finding of her being disabled. If she can perform her past relevant work then the grid rules would not be applicable. But we think the evidence conclusively determines that she cannot perform her past relevant work because she can't be on her feet for six out of eight hours day in and day out which is something that is required for her to be able to do her past relevant work and which is the the objective evidence is very strong in this case. Now I think an important part of this case has to do with some significant errors that the judge made. In addition to not realizing that the two state agency doctors that she relied upon that were saying that Miss Todd was disabled when they gave the opinion but that she would improve it later. The judge also in her decision stated that she was discounting both Miss Fussfield and Miss Todd because in the record it showed on January of 2015 Miss Fussfield reported in her chart notes that Miss Todd was feeling well and had good energy. She cited to 15 F page 10 which is page 500 in the record. 500 in the record doesn't show that at all in fact it shows just the opposite. If you look at Miss Fussfield's chart notes she writes down symptoms that are present. Regarding feeling well and good energy that was under the heading of not present and so feeling well and good energy were not present not present. That was a significant error that the ALJ made because she relied upon this both to reject Miss Fussfield and to reject Miss Todd's credibility. What is significant about this that there's 21 times in the record when Miss Fussfield notes in her chart records at different office visits of whether or not Miss Todd was feeling well. 18 out of 21 times she said that was not present. Only three of 21 times did she say it was present. In the one example the ALJ gave she got it wrong that was one of the times when it was not present. So in the ALJ's head she was thinking that when Miss Fussfield said feeling well that she was actually feeling well but 18 out of 21 times she wasn't. When an ALJ errs they're not entitled to the same deference that an ALJ would be entitled to if they don't err. The standard becomes as is enunciated by this court in Stout that unless the court can confidently conclude that no other reasonable ALJ would reach a different conclusion that the error is not harmless. That's the rule in the Ninth Circuit. Similar rule in the Seventh Circuit. Now so you're down to about a minute and 45 seconds. Did you want to reserve the remainder of your time? I do. All right. Thank you. Mr. Ellsberg? Morning your honors. Good morning counsel. I'm Thomas Ellsberg for the Commissioner. I first would like to address, well first I want to note out that the ALJ as in all cases utilizes a five-step sequential evaluation process to assess disability. And the issues at stake here are steps two, three, and four in Ms. Todd's subjective report. Regarding Ms. Fusfeld, I'm not quite sure she had three opinions that the ALJ addressed. She has other sources to find in the regulations so the ALJ need only give germane reasons supported by the record for discounting her opinion. While counsel indicates I believe it's the January 2015 and talks about whether she was feeling good or not, that was not a primary factor underlying the ALJ's analysis. In fact, primarily it was the inconsistency between Ms. Fusfeld's assessment of complete disability, not even sedentary work. She was fully disabled and that was inconsistent with the record. It was unsupported by the record. And in addition, in regards to the January 2015 opinion, it was rejected by the ALJ because that's an issue reserved to the Commissioner. Whether a claimant is disabled, ultimately that's a conclusion the Commissioner makes, not a medical source. The ALJ must consider the medical source evidence and opinions but they're not conclusive. What's your response to counsel's argument that the two state doctors found Ms. Todd disabled but that she would get better? I have to concede I am taken aback by this assertion. While counsel is speaking, I looked at those two very opinions and they specifically state, and I don't know if I'm missing a nuance in the development of their analysis, the evidence, but their conclusions state she is not only able to perform light work, she's capable of performing her past relevant work. So I'm at a loss as to where this assertion comes from. I don't recall that in the brief, but it might be there in Ms. Todd's brief. I don't recall that, but I might have missed it. Yeah, and I don't recall it and I see their ultimate conclusion stating she is capable of light work and performing her past relevant work. So nonetheless... Mr. Ellsbury, I have a few questions about the ALJ's finding with respect to Ms. Todd's credibility. The first one is the ALJ cited her DUI convictions as being inconsistent with her report as to the reasons that she's unable to drive, but the last of those convictions was in 2004, several years before the onset date. So how were those relevant or inconsistent with what she said about driving? Very good point, and I would concede that was an error. That was the most recent and that's almost 10 years prior to the alleged onset date. That was an error. And then what about her daily activities? I mean, she said she did some cooking, so did the functional report. She said she could do laundry, but not the heavier bedding items, so did the functional report. I think her claim about how much dishwashing she did, all of those seem to be consistent. So what was the... what's the inconsistency there? I believe the inconsistency that the ALJ is referring to is her assertions that she was completely unable to. If I look to those specifically, she said in her testimony in August 2015, she said she was unable to do laundry, but in her function report in August 2013, she had said that she does do her laundry. Somewhat limited, but that's distinguishable from unable to do the laundry. Same with the cooking and the dishwashing. Again, she testified that she completed up to 60 minutes of dishwashing daily without any difficulty. No, that was in her functional report. In her testimony, she said she was completely unable to. Well, no, I mean, I'm looking at page 20, or page 9 of the ALJ's opinion. The ALJ said that the claimant testified that she is only able to do limited dishwashing. That doesn't strike me as obviously inconsistent with doing 60 minutes a day. I would agree that it's not obviously inconsistent, but the ALJ, as the finder of fact, is entitled to a reasonable conclusion. It's not the only conclusion, but that does not undermine the reasonableness of that conclusion. Council, what if we disagreed with you on that, and you've already conceded that the DUI finding is not supportable? So what does that do to the ALJ's credibility determination, if we disagree with you on the point that Judge Miller raised? Then there remains the objective medical evidence, the lack of treatment, and the lack of support for significant side effects from medication. Those still support the ALJ's credibility determination, and even if there are some errors, the issue is not whether the ALJ erred in and of itself, it's that is the determination of the decision still supportable with And on the side effects, looking at page 10, so the Todd said that she had significant side effects from, I think it was prednisone, and the ALJ cited Fussfield's report from 2013 that she was feeling better, but I believe some months later, Fussfield's said that she was still feeling very drowsy as a result of the medication, which was the side effect she was complaining of. So, looking at all of them together, doesn't that undermine the claim of an inconsistency? What I would cite to you is Dr. Chen's report, and I'm looking at the date of that now to put that in context, which was in November 2013, and the ALJ relied on Dr. Chen's report that she only had a relatively mild degree of impairment in concentration, which the ALJ, in context of assessing the fatigue, it's reasonably under, supports her conclusion that those side effects were not ongoing and extensive. If we were to conclude that the credibility finding was not sustainable, do you think, would you have an argument that it was nevertheless harmless? If you found all four or five reasons, that, I believe, if you find all five reasons unacceptable, regardless of my position, that precludes a finding of supporting the ALJ's credibility determination. I appreciate you had some others there. And if there are any further questions regarding the credibility determination, I would love to address those. I mean, I believe the objective medical evidence is real clear. There's the assertions of not being able to walk, and there is absolutely no objective evidence of mobility. It's always based on Ms. Todd's subjective reporting or Ms. Fussfeld's notation of a history of a need for a walker, but there's absolutely no evidence in the record of an objective need for a walker, at least not on a constant basis. So that in itself is a huge conflict with Ms. Todd's subjective complaints of inability to walk. There's also the physical examinations with normal gait, full range of motion, full motor strength, which if you were limited to the degree being assessed by Ms. Todd, constant inability to move. There should be some reflection of some degradation in strength, but here it was full, same with range of motion. So I would argue that is a strong part supporting the ALJ's credibility determination. I understand your concerns with the inconsistencies, and those are not the strongest, especially with the activities of daily living. That's always, I think, a little difficult, but the feeling so much better, while there are incidents where she wasn't and there's incidents where she is, the ALJ has to look at the entire context of the period. Ms. Todd herself said that, I need to rephrase that question, for the majority of the relevant period, her prednisone was adjusted to limit the side effects and it controlled the joint pain and the other subjective complaints. So those two alone, I would argue, do support the ALJ's credibility determination. All right, thank you, counsel. Thank you. Thank you, your honors. I did want to, if I could, refer to the court where it does say that the state agency did find her currently disabled, but in the future. In the record at 73 is Dr. Staley's report, and there's very exact words used by Dr. Vergy in his report at 96. And what it is, is at the bottom of that page where they talk about residual functional capacity, they then tell you in that report, and this is standard in the state agency's forms, what period of time this is for. And so when they said that she was able to do light work, the period of time in this, usually it says from onset date is what they would typically say. In this case, both of them said that the period of time for the RFC they gave was 12 months after onset, May 30, 2014. This fact is driven home in the letter that the state agency sent to Ms. Todd at 131, where it says, begin quote, we realize that you are presently unable to work, but your condition is not expected to prevent you from working for 12 consecutive months. By May 31, 2014, the evidence indicates that while you would still have some difficulty in doing work that requires substantial standing, walking, and lifting, and you would still be able to perform your past work as hotel clerk as of May 31, 2014. That's pretty significant because she didn't actually improve. Her condition deteriorated. She went from 197 pounds to 280 pounds from a combination of her medications that she was taking, inability to take weight loss medications due to her irregular heart rhythm that she had, and that was a new condition that had developed by that time, 2014, irregular heart rhythm. She had congestive heart failure. She had severe edema. Those are all objective findings that are supported. I would also like to let the court know that in Rawlins, this Ninth Circuit has said that objective evidence alone cannot be a basis for an adverse credibility finding. So if the other reasons are taken away, you cannot find an adverse credibility finding based on objective evidence alone. Thank you, counsel. Your time has more than expired. We thank both counsel for their helpful arguments, and this case will be submitted.
judges: Murphy, Bennett, Miller